UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| XAVIER FRANCISCO CARRILLO FERNANDEZ,<br><br>Petitioner,<br><br>v.<br><br>JASON KNIGHT, *et al.*,<br><br>Respondents. | Case No. 2:25-cv-02221-RFB-BNW<br><br>**ORDER** |

Before the Court is Petitioner Xavier Francisco Carrillo Fernandez's Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his detention at Nevada Southern Detention Center in the custody of the Federal Respondents. For the following reasons, the Court grants the Petition.

**I.     INTRODUCTION**

This case is one of a rapidly growing number before this Court challenging the federal government's new policy of mandatory detention of all noncitizens charged with entering the United States without inspection.[1] The executive branch now takes the position that the INA,

---

[1] This Court has already granted petitioners relief—both preliminary and on the merits—in twenty-three similar challenges. See Escobar Salgado v. Mattos, No. 2:25-cv-01872-RFB-EJY 2025 WL 3205356 (D. Nev. Nov. 17, 2025); see also Herrera v. Knight, No. 2:25-CV-01366-RFB-DJA, 2025 WL 2581792 (D. Nev. Sept. 5, 2025); Vazquez v. Feeley, No. 2:25-CV-01542-RFB-EJY, 2025 WL 2676082 (D. Nev. Sept. 17, 2025); Roman v. Noem, No. 2:25-CV-01684-RFB-EJY, 2025 WL 2710211 (D. Nev. Sept. 23, 2025); Carlos v. Noem, No. 2:25-CV-01900-RFB-EJY, 2025 WL 2896156 (D. Nev. Oct. 10, 2025); E.C. v. Noem, No. 2:25-CV-01789-RFB-BNW, 2025 WL 2916264 (D. Nev. Oct. 14, 2025); Perez Sanchez v. Bernacke, No. 2:25-CV-01921-RFB-MDC (D. Nev. Oct. 17, 2025); Aparicio v. Noem, No. 2:25-CV-01919-RFB-DJA, 2025 WL 2998098 (D. Nev. Oct. 23, 2025); Dominguez-Lara v. Noem, No. 2:25-CV-01553-RFB-EJY, 2025 WL 2998094 (D. Nev. Oct. 24, 2025); Bautista-Avalos v. Bernacke, 2:25-CV-01987-RFB-BNW (D. Nev. Oct 27, 2025); Arce-Cervera v. Noem, No. 2:25-CV-01895-RFB-NJK, 2025 WL 3017866 (D. Nev. Oct. 28, 2025); Alvarado Gonzalez v. Mattos, No. 2:25-CV-01599-RFB-NJK

specifically 8 U.S.C. § 1225(b)(2)(A), requires the detention of all undocumented individuals during the pendency of their removal proceedings, which can take months or years. According to this interpretation, detention without a hearing is mandatory, no matter how long a noncitizen has resided in the country, and without any due process to challenge the factual or legal basis for their detention.

According to a leaked internal memo, the Department of Homeland Security (DHS), in conjunction with the Department of Justice (DOJ) adopted this new legal position on a nationwide basis on July 8, 2025.[2] It subjects millions of undocumented U.S. residents to prolonged detention without the opportunity for release on bond, in contravention of decades of agency practice and robust due process protections hitherto afforded to such residents under 8 U.S.C. § 1226(a).[3] On September 5, 2025, the Board of Immigration Appeals (BIA) issued a precedential decision adopting this new interpretation of the government's detention authority under the INA. See Matter of Yajure Hurtado, 29 I&N Dec. 216 (BIA 2025) ("Hurtado"). After Hurtado, immigration judges no longer have authority to hear bond requests or grant bond to noncitizens present in the U.S. who entered without inspection. Id.

The overwhelming majority of district courts across the country, including this Court, that have considered the government's new statutory interpretation have found it incorrect and unlawful. See Escobar Salgado v. Mattos, No. 2:25-CV-01872-RFB-EJY, 2025 WL 3205356 (D.

---

(D. Nev. Oct. 30, 2025); Rodriguez Cabrera v. Mattos, No. 2:25-cv-01551-RFB-EJY, 2025 WL 3072687 (D. Nev. Nov. 3, 2025); Berto Mendez v. Noem, No. 2:25-cv-02602-RFB-MDC, 2025 WL 3124285 (D. Nev. Nov. 7, 2025); Cornejo-Mejia v. Bernacke, No. 2:25-cv-02139-RFB-BNW, 2025 WL 3222482 (D. Nev. Nov. 18, 2025); Lucero Ortiz v. Bernacke, No. 2:25-cv-01833-RFB-NJK, 2025 WL 3237291 (D. Nev. Nov. 19, 2025); Perez Sales v. Mattos, No. 2:25-cv-01819-RFB-BNW, 2025 WL 3237366 (D. Nev. Nov. 19, 2025); Hernandez Duran v. Bernacke, No. 2:25-cv-02105-RFB-EJY, 2025 WL 3237451 (D. Nev. Nov. 19, 2025); Cabrera-Cortes v. Knight, No. 2:25-cv-01976-RFB-MDC, 2025 WL 3240971 (D. Nev. Nov. 20, 2025); Jacobo Ramirez v. Noem, No. 2:25-cv-02136-RFB-MDC, 2025 WL 3270137 (D. Nev. Nov. 24, 2025); Garcia-Arauz v. Noem, No. 2:25-cv-02117-RFB-EJY, 2025 WL 3470902 (D. Nev. Dec. 3, 2025); Silva Hernandez v. Noem, No. 2:25-cv-02304-RFB-EJY (D. Nev. Dec. 3, 2025); Reyes Cristobal v. Bernacke, No. 2:25-cv-02231-RFB-EJY (D. Nev. Dec. 4, 2025).

[2] See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, AILA Doc. No. 25071607 (July 8, 2025), https://perma.cc/5GKM-JYGX.

[3] See Kyle Cheney & Myah Ward, Trump's new detention policy targets millions of immigrants. Judges keep saying its illegal., Politico (Sept. 20, 2025 at 4:00 p.m. EDT), https://www.politico.com/news/2025/09/20/ice-detention-immigration-policy-00573850, https://perma.cc/L686-E97L.

Nev. Nov. 17, 2025) (finding "that the plain meaning of the relevant statutory provisions, when interpreted according to fundamental canons of statutory construction," as well as the legislative history and decades of consistent agency practice establish "that the government's new interpretation and policy under [§ 1225(b)(2)(A)] is unlawful."); see also, Barco Mercado v. Francis, No. 1:25-CV-06852, at *9-10 (S.D.N.Y. Nov. 26, 2025) (collecting over 350 decisions by over 160 different district judges finding the application of §1225(b)(2)(A) to noncitizens residing in the United States unlawful). A nationwide class has also been certified, and declaratory relief has been granted finding the government's reinterpretation of § 1225(b)(2) unlawful. See Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861 (C.D. Cal. Nov. 20, 2025); Bautista v. Santacruz, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025).

Petitioner challenges Federal Respondents' application of this policy and the regulatory automatic stay mechanism to prolong his detention for months, despite an immigration judge's finding that because Petitioner was subject to § 1226(a) and presented no danger to the community nor a flight risk, release upon bond in the amount of $2,500 (with alternatives to detention at DHS discretion) was appropriate. Respondents contend that the immigration judge erred in ordering Petitioner's release pursuant to section 8 U.S.C. § 1226(a), that Petitioner's arguments regarding the automatic stay are now moot in light of the BIA's November decision vacating the IJ bond decision in Petitioner's case; Petitioner concedes the latter point in his traverse. Respondents further assert that Petitioner is lawfully detained and subject to mandatory detention for the duration of removal proceedings under 8 U.S.C. § 1225(b)(2) and that this detention does not offend due process.

For the reasons set forth below, the Court finds that Petitioner's detention is unlawful under the INA and violates his due process rights. The Court thus orders his immediate release on bond as initially ordered by the immigration judge.

II.   **BACKGROUND**

  **A. Petitioner Xavier Francisco Carrillo Fernandez**

The Court makes the following findings of fact relevant to Petitioner. Petitioner Carrillo Fernandez is a 40-year-old native and citizen of Venezuela, who entered the United States without inspection in 2023 and has resided in the United States since. Petitioner came to the U.S. seeking asylum from persecution and torture from the government of his home country, Venezuela. ECF No. 1 at 21. On December 26, 2023, DHS, after taking Petitioner into custody in Texas, determined Petitioner was inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i), for entering without inspection and released him on his own recognizance under 8 USC § 1226. ECF No. 1-2. DHS simultaneously issued a Notice to Appear to Petitioner under 8 USC § 1229a, placing him into removal proceedings. ECF No. 10-4.

Petitioner is married, he is the primary breadwinner for his household in Midvale, Utah, which includes himself, his wife, and his stepdaughter, and he also provides financial support to his daughter, who resides in Venezuela. His criminal record is comprised solely of three traffic-related law enforcement stops. Petitioner Carrillo Fernandez has been in ICE custody since July 31, 2025, and is currently detained at the Nevada Southern Detention Center (NSDC) in Pahrump, Nevada. On July 31, 2025, Petitioner was detained by undercover ICE agents while on his way to work in Midvale, Utah, and transferred to NSDC. ICE did not set bond, indicating that he was being held in mandatory detention without bond, despite the fact that DHS has found Petitioner to be subject to § 1226 and released him on his own recognizance in accordance with § 1226 once before in 2023. See ECF No. 1-2.

Petitioner requested a bond hearing before the immigration court, and on August 14, 2025, Immigration Judge Glen Baker ordered Petitioner's release on bond in the amount of $2,500. ECF No. 1-1. The IJ found Petitioner presented neither a flight risk nor danger to the community and further concluded that Petitioner is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2), but rather, subject to the provisions of the default detention scheme in § 1226(a). Id. DHS reserved appeal and filed form EOIR-43, invoking the automatic stay pending appeal under 8 C.F.R. § 1003.19(i)(2) on August 14, 2025; a week later, on August 21, 2025, DHS filed an appeal of the IJ's order to the BIA. ECF No. 1-3. The BIA has since vacated IJ Baker's decision on the basis of Hurtado in a decision filed November 13, 2025. ECF No. 10-1.

In October 2025, an IJ held a final hearing on the merits of Petitioner's asylum application, which was filed with the Salt Lake City immigration court in October 2024. ECF No. 1 at 21. The IJ denied Petitioner's application, ordered him removed, but withheld his removal indefinitely under § 1231(b)(3). Id. at 22. To be granted withholding of removal, Petitioner had to make a showing that it is more likely than not that he will face persecution on account of a protected ground if returned to Venezuela. INS v. Stevic, 467 U.S. 407 (1984). Petitioner has appealed the denial of his asylum application; thus, the removal decision is not yet final. Cui v. Garland, 13 F.4th 991, 996 (9th Cir. 2021) ("A removal order 'become[s] final upon the earlier of (i) a determination by the [BIA] affirming such order; or (ii) the expiration of the period in which the alien is permitted to seek review of such order by the [BIA].'") (citing 8 U.S.C. § 1101(a)(47)(B)); see also 8 CFR § 1241.1(a) ("An order of removal made by the immigration judge at the conclusion of proceedings under [8 U.S.C. § 1229a] shall become final [u]pon dismissal of an appeal by the Board of Immigration Appeals").

Petitioner and his family have struggled during his prolonged detention. Petitioner has been separated across state lines from his home, and he has been unable to provide for his family members—all of whom depend on him for financial support—for the four months he has been detained.

### B. Legal Background

Mr. Carrillo Fernandez challenges his continued detention under § 1225(b)(2) as unlawful and asserts that § 1226(a) applies to him and noncitizens like him. The Court incorporates by reference its discussion and findings regarding the legal background of detention authority under the INA, the automatic stay provision under 8 CFR § 1003.19(i)(2), and the government's new mandatory detention policy, as provided in its recent ruling in Escobar Salgado. 2025 WL 3205356, at *2-6.

### III. PROCEDURAL HISTORY

On November 11, 2025, Petitioner filed his 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus against Respondents Jason Knight, in his official capacity as the Acting Director of the

1  Las Vegas Field Office of ICE's Enforcement and Removal Operations Division (ERO); John
2  Mattos, in his official capacity as warden of NSDC; Kristi Noem, in her official capacity as
3  Secretary of DHS; Pamela Bondi, in her official capacity as Attorney General of the United States;
4  DHS, as the federal agency responsible for implementing and enforcing the INA; and EOIR, as
5  the federal agency responsible for implementing and enforcing the INA in removal proceedings,
6  including bond hearings and appeals thereof. ECF No. 1.

7  This case was initially assigned to the Honorable Judge Jennifer A. Dorsey, but on
8  November 19, 2025, was transferred to the undersigned judge as related to three pending putative
9  class actions, Case Numbers 2:25-cv-01542-RFB-EJY, 2:25-cv-01553-RFB-BNW, and 2:25-cv-
10 02146-RFB-MDC. ECF No. 4. On November 19, 2025, counsel for Respondents filed a notice of
11 appearance. ECF No. 5. Respondents' counsel sought an extension of time to respond to the
12 Petition, and on November 24, 2025, Respondents filed their return, arguing for the Petition's
13 denial. ECF Nos. 7, 10. Petitioner filed a traverse on November 26, 2025. ECF No. 11.

14 The Court's Order follows.

### IV.    LEGAL STANDARD

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "Its province, shaped to guarantee the most fundamental of all rights, is to provide an effective and speedy instrument by which judicial inquiry may be had into the legality of the detention of a person." Carafas v. LaVallee, 391 U.S. 234, 238 (1968). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973).

A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301

(2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. Zadvydas v. Davis, 533 U.S. 678, 687 (2001); see also Demore v. Kim, 538 U.S. 510, 517 (2003). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." Yong v. I.N.S., 208 F.3d 1116, 1120 (9th Cir. 2000) (citing 28 U.S.C. § 2243).

### V. DISCUSSION

#### A. Jurisdiction

As an initial matter, the Court has habeas jurisdiction to review Petitioner's challenge to the lawfulness of his detention, because the relevant jurisdiction stripping provisions of the INA, 8 U.S.C. § 1252 do not apply. See Escobar Salgado, 2025 WL 3205356, at *8-10; Hernandez Duran v. Bernacke, 2:25-cv-2105-RFB-EJY, 2025 WL 3237451, at *4 (Nov. 19, 2025). In evaluating the jurisdiction stripping provisions of the INA, the Court is guided "by the general rule to resolve any ambiguities in a jurisdiction-stripping statue in favor of the narrower interpretation and by the strong presumption in favor of judicial review." Arce v. United States, 899 F. F.3d 796, 801 (9th Cir. 2018) (*per curiam*) (internal quotations and citations omitted).

In their return to the Petition, Respondents assert that Petitioner's habeas challenge to the lawfulness of his detention is jurisdictionally barred by 8 U.S.C. §§ 1252(g) and 1252(b)(9). As this Court has previously ruled, and which is incorporated by reference herein, Respondents' arguments under those jurisdiction stripping provisions of the INA are foreclosed by Ninth Circuit and Supreme Court precedent. See Escobar Salgado, 2025 WL 3205356, at *8-10.

#### B. Lawfulness of Petitioner's Detention under the INA

Petitioner Carrillo Fernandez challenges the government's new interpretation of the INA, and his detention thereunder, as unlawful.[4] Although Petitioner's initial challenge to his detention included a constitutional challenge to DHS's invocation of the automatic stay under 8 C.F.R. §

---

[4] The Respondents have indicated that the basis for Petitioner's detention is their interpretation of the INA's statutory scheme, with respect to §§ 1225 and 1226. They have not asserted, nor does this order address, any authority to detain Petitioner based upon the removal order in his concurrent asylum proceedings, the withholding of the removal order, nor the appeal of the denial of his asylum claim.

1003.19(i)(2), Petitioner acknowledges that challenge is now moot because the BIA reversed IJ Baker's decision pursuant to Hurtado, and the automatic stay is therefore no longer in effect. The Court fully incorporates by reference its reasoning and holding regarding Respondents and the BIA's new interpretation of § 1225(b)(2)(A) from Escobar-Salgado. WL 3205356, at *10-26. As it did in Escobar-Salgado, the Court rejects Respondents' statutory interpretation here and finds Petitioner in this case is detained under § 1226(a) and its implementing regulations, because he is a resident with established ties to the country, and his most recent arrest and detention by ICE was not upon arrival and was far from any port of entry. Id. at 22. Likewise, because this Court has found that Hurtado reverses decades of precedent and agency practice based on an incorrect statutory interpretation, the BIA's reversal of IJ Baker's bond order pursuant to Hurtado is unlawful, and IJ Baker's bond release order should remain in effect. Id.

### C.  Due Process

Petitioner challenges his ongoing detention without ability for release on bond under the Due Process Clause of the Fifth Amendment. Even if this Court were to accept the government's new reading of § 1225(b)(2), it would still have to contend with Petitioner's due process challenge to his detention on this basis.

Respondents assert that Petitioner's due process rights are not offended by his continued detention without ability for release on bond. Respondents cite to Jennings v. Rodriguez for the proposition that "Congress has authorized immigration officials to detain some classes of aliens during the course of certain immigration proceedings. Detention during those proceedings gives immigration officials time to determine an alien's status without running the risk of the alien's either absconding or engaging in criminal activity before a final decision can be made." ECF No. 10-2 at 16 (citing Jennings v. Rodriguez, 583 U.S. 281, 286 (2018)). However, in this case, an immigration judge has already found Petitioner does not pose a flight risk nor a danger to the community, defeating that argument. Respondents further cite to Demore, where the Supreme Court upheld detention without bond hearings for a specific class of noncitizens: those whose detention is governed by § 1226(c). Id. at 16-17 (citing Demore, 538 U.S. at 513, 526-57). However, Demore's holding was based on the government establishing a particular interest in

detaining a limited class of noncitizens who had been convicted of certain crimes and were therefore statistically more likely to abscond from removal proceedings. Demore, 538 U.S. at 526-27. In addition, the Court noted that detention without bond of noncitizens in that narrow class satisfied due process because the convictions had been obtained with the "full procedural protections our criminal justice system offer." Id. at 513-14. That interest is plainly not implicated in this case, where Petitioner's criminal history is limited to traffic stops. Despite putting forth these arguments, the government has not shown it has any individualized purpose in continuing to detain Petitioner.

This Court further incorporates by reference the legal authorities and standards set forth in Escobar Salgado v. Mattos regarding the due process rights of noncitizens. 2025 WL 3205356, at *22-24. For the following reasons, the Court finds that Petitioner is currently being detained without the ability for release on bond in violation of his procedural and substantive due process rights.

1. Procedural Due Process

To determine whether detention violates procedural due process, courts apply the three-part test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976). See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1203-07 (9th Cir. 2022) (collecting cases and applying the Mathews test in a similar immigration detention context and holding "[u]ltimately, Mathews remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context").

Under Mathews, the courts weigh the following three factors: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

The first Mathews factor considers the private interest affected by the government's ongoing detention of Petitioner without ability for release on bond. See Mathews, 424 U.S. at 335. Here, that is Petitioner's interest in being free from imprisonment, "the most elemental of liberty

interests." Hamdi, 542 U.S. at 529. In this country, liberty is the norm and detention "is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755 (1987); see also Rodriguez Diaz, 53 F.4th At 1207 ("An individual's private interest in freedom from prolonged detention is unquestionably substantial.") (citations omitted).

Additionally, Petitioner's liberty interest is not diminished by any final order of removal,[5] or the availability of any existing process to challenge Respondents' decision to detain him without bond, particularly given that this decision to continue detention is despite an IJ's determination that bond is warranted in Petitioner's case. Cf. id. at 1208 (holding the habeas petitioner's liberty interest was diminished by the fact that he was subject to a final order of removal, had already been afforded an individualized bond hearing where *bond was denied* after presentation of the evidence, and had additional process available to him through a further bonding hearing before an IJ upon a showing of materially changed circumstances).

Second, the Court considers "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional procedures." Mathews, 424 U.S. at 335. There are no existing procedures whatsoever for Petitioner to challenge his detention pending the conclusion of his removal proceedings without the opportunity for release on bond under the government's policy. The risk of erroneous deprivation is extraordinarily high where ICE and DHS agency officials have sole, unguided, and unreviewable discretion to detain Petitioner without any individualized showing of why his detention is warranted, nor any process for Petitioner to challenge the exercise of that discretion. The likelihood of erroneous deprivation caused by this lack of process is demonstrated in this case by the fact that IJ Baker held a bond hearing for Petitioner prior to Hurtado, considered all relevant evidence and factors, and found that the government had not established a justification for his detention. Accordingly, it is certain that Petitioner is being arbitrarily and unjustifiably deprived of his liberty through his continued detention.

The additional procedures in this case would simply be a recognition of, and respect for,

---

[5] As previously noted by the Court, there is a pending removal order, but it is not legally final.

- 10 -

existing procedures under § 1226(a), which include an individualized custody redetermination by an immigration judge, *i.e.*, a bond hearing, like the one Petitioner received prior to Hurtado. These procedures substantially mitigate the risk of erroneous deprivation of Petitioner's liberty, because those procedures require the government to establish that Petitioner presents a flight risk or danger to the community to continue his detention for the pendency of removal proceedings. This would account for the constitutional requirement that "once the flight risk justification evaporates, the only special circumstance [ ] present is the alien's removable status itself, which bears no relation to a detainee's dangerousness." Zadvydas, 553 U.S. at 691-92. As such, the second Mathews factor also weighs heavily in favor of granting Petitioner recognition of his procedural protections under § 1226(a).

The third and final Mathews factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal aliens" and "securing an alien's ultimate removal," are "interests of the highest order." Rodriguez Diaz, 53 F.4th at 1188-89. These interests are in fact served by respecting an individualized determination by an immigration judge, based on a review of evidence presented by the government and the noncitizen, as to whether an individual is dangerous or at risk of fleeing removal proceedings, under existing, well-established procedures. In failing to articulate any individualized reason why detaining Petitioner is necessary to enforce immigration law, the question arises "whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." Demore, 538 U.S. at 532-33 (Kennedy, J. concurring). And the government has no interest in the unjustified deprivation of a person's liberty.

Further, the Court finds that limiting the use of detention to only those noncitizens who are dangerous or a flight risk through existing bond procedures serves the government and public's interest by *reducin*g the fiscal and administrative burdens attendant to immigration detention. Hernandez v. Sessions, 872 F.3d 976, 996 (9th Cir. 2017) (Noting in 2017 that "the costs to the

public of immigration detention are staggering: $158 each day per detainee, amounting to a total daily cost of $6.5 million. Supervised release programs cost much less by comparison: between 17 cents and 17 dollars each day per person.").

In sum, the Court finds the Mathews factors weigh heavily in favor of Petitioner, and therefore, his detention without the ability for release on bond violates his procedural due process rights.

    2. Substantive Due Process

Immigration detention violates the Due Process Clause unless it is ordered in a criminal proceeding with adequate procedural protections, or in non-punitive circumstances "where a special justification . . . outweighs the individual's constitutionally protected interest in avoiding physical restraint." Zadvydas, 533 U.S. at 690.

Respondents have asserted no individualized justification—let alone a special or compelling justification—to continue to deprive Petitioner of his physical liberty following the IJ's grant of bond. Accordingly, in addition to finding that the challenged regulation violates procedural due process, this Court further finds that Petitioner is currently detained in violation of his substantive due process rights. See Escobar Salgado, 2025 WL 3205356, at *25.

### D. Attorneys' Fees

The Court defers on ruling on the matter of attorneys' fees and costs. Should Petitioner's counsel wish to pursue a claim for attorneys' fees and costs under the Equal Access to Justice Act (EAJA), they are instructed to file a separate motion on the issue in accordance with LR 54-14.

### VI. CONCLUSION

Based on the foregoing, and on the record and proceedings herein, **IT IS HEREBY ORDERED** that Petitioner Carrillo Fernandez's Petition for Writ of Habeas Corpus is **GRANTED**.

Respondents are **ORDERED** to release Petitioner from custody by **7:00 p.m. on December 4, 2025.** Petitioner shall be subject to the bond and other conditions imposed by the IJ.

**IT IS FURTHER ORDERED** that that the parties shall file a joint status report on or

before **December 5, 2025**, confirming that Petitioner has been released in compliance with this Order.

       **IT IS FURTHER ORDERED** that Petitioner shall have until **January 18, 2026**, to satisfy the bond conditions. If he does not satisfy them, he will be subject to rearrest and detention.

       **DATED:** December 4, 2025.

       **RICHARD F. BOULWARE, II**
       **UNITED STATES DISTRICT JUDGE**